Judge Underwood
delivered the opinion of the Court.
In May, 1816, James S. Bate and John Bate, jr. executed their obligation to James H. Over-street, the appellant, and others, trustees of the Methodist Episcopal Church in Louisville, and their successors, for a lot of ground therein described. In 1824, the appellant filed his bill against his co-obligees, and against others who had been appointed trustees, in the places of some of the original trustees who had re* moved, resigned or withdrawn; and also against the said Bates, alleging that the lot was bought by the obligees in the bond, for the purpose of erecting there* on a house of worship, for the use of the Methodist Episcopal Church, and that the ordinances, rules and regulations of said church, under which said lot "was bought, require the conveyance to be made to trustees and their successors forever, in trust, that they should build or cause to be erected, a house or place of worship thereon, for the use of the members of said church, “provided that if the said trustees or any of them, or their successors, have advanced or shall advance any sum or sums of money, or are or shall be responsible for any’ sum or sums of money, on account of said premises, and they, the said trustees or their successors, be compelled to pay the same, they or a majority of them should be authorized to raise such sum or sums of money, by a mortgage on the premises, or by a sale thereof.” The bill further charges that the appellant, at the request of the trustees and William Forquar, *368 had their note for $¡1000, discounted in hank, the proceeds of which were applied to building a house of worship on said lot, for the use of the church; that the appellant had paid $¡250 of the note, out of his private funds, for which he had not been reimbursed, besides another sum of $j80, for work done on the building, and that the trustees now refused to pay these demands. Wherefore, the bill was filed to have the lot sold to pay the appellant’s claims, and for general relief.
This case not Within the act of February 1,1814; 2 Dig. 1057.
Some of the defendants answered, admitting the jus-iice of the appellant’s claims; others denied their justice, insisting they were donations, and also plead the statute of limitations in bar, and the Bates and two others demurred. The court, on hearing, dismissed the bill.
By an act passed February 1st, 1814, see 2 Dig-1057, any society or sect of Christians in this commonwealth, associated in congregational form, are authorized to acquire, not exceeding four acres of land, for the purpose of erecting thereon a house of worship, grave yard and pound for horses. The act points out the manner of vesting the title in trustees, for the use and benefit of the congregation, and provides for a succession of trustees, not exceeding five, to support the title. The trustees vested with the title, are authorized “to do any legal act in conducting the same, which may be necessary for the uses aforesaid,” that is, for the erection and preservation of a house or houses of worship, making enclosures, &c. for the accommodation of the congregation. In carrying into effect the objects contemplated by the legislature, all necessary incidental powers, by implication, are vested in the trustees; and in their conduct and management of the property, we see no reason why they may not create a lien upon it for improvements and repairs. Such power is not prohibited and we think its exercise may often become essential to the comfort and welfare of the congregation. The trustees may not be disposed to render themselves individually liable to mechanics for improvements. It may be important to have work speedily done, either to finish or repair a building. This might be accomplished by creating a lien *369 ;¿n the property when, if á lien could not fee given-, the buildings would not be erected or would be suffered to 'decay and thus the objects of the law, providing the dissemination of religious instruction', by furnishing suitable houses in which it may be done, would be defeated. It does not appear in the present case, that the legal title tó the lot in qtiesVion, has ever been vested in trustees, according to the act of assembly. The inference is conclusive tó the contrary. By the act of assembly, five trusteed are to be selected and their names entered on the records of the county court’; no such thing appears tó have been done in this case. The bond on the Bate’s, exhibited; indicates that the legal title yet abides in them. We cannot; therefore, derive any aid from the act of assembly, in deciding the present controversy.
The ctmncelfeotuate'tbe * objects of vol“?íary asithe'diffusiou? of religion; “ do?nS that justice^ dong to each of th® assooj. h A¡ppe!' Hen oá the lot improved, for!lIS advan" oe5‘
This must bé .regarded ás án association of indi’viduals, to accomplish the benevolent and laudable purpose of erecting á house for religious worship, ánd who have not yet placed the title of the property acquired for that purpose,-in trustees, as provided for by law. We have no doubt that courts of chancery may interfere to give efficacy to thesé individual associations, since the passagé of the statute. Their purpose may be regarded as a trust, which the chancellor will see executed according to the intent of the parties, But whenever application may be riiadé lo á court of equity to that énd, the chancellor ought to survey all the circumstances, and sec that justice is done tó’each individual concerned, before the property in which he has an interesáis set apart for religious uses. In this case the appellant is one of the obligee's in the bond executed by the Bate’s fór the title. He has, therefore, an equitable interest in the bond, and might insist that the Baté’s should convey to him and his co-obligees, and thus the obligees would be inVésted with the legal estate, as joint tenants'. Would the chancellor deprive the appellant of his portion until he had been paid, whatever, hé had expended on ihe properly over the amount of his donations, when such excess of expenditure was mádé, under circumstances showing an intention to claim a reimbursement? We think not. Tó the amoünt of such excess the appellant,in conscience; would have fair claim in such a case, and we aré of *370 opinion that the present is that case. At the time the appellant expended his money he was acting in the capacity of a trustee for the association, and by the rule which was evidently adopted for the government of the conduct of the trustees, and under which we think it clear the appellant acted, he had a right to look to the lot he was improving, to be indemnified for his excess of expenditure, over and above his dona* tions.
The statute oflimitation does not run between the trustee and cestui que trust The operation of the statute is reciprocal. The statute would not bar a claim of the appellees, against appellant; neither will it bar a claim of appellant against appellee, growing out of the same relation.
This brings us to the consideration whether the expenditures by the appellant, over and above his subscriptions or donations, have been made so long that his claim is barred by lapse of time; for it is clear from the admissions of the defendants, or part of them at least, and the proof, that the appellant expended much more than he subscribed, and we are equally satisfied that the evidence will not justify the conclusion that he ever made a donation of such excess for the benefit of the church. It is established as proof, that he said, in substance, while excited, that he never expected to get his money, and that if the trustees required it, he would give them a receipt; but it does not appear that such a thing was required of him by the trustees, and we cannot infer from the conversation, any deliberate intention on his part, to give, and no act was done amounting to a gift. The appellant must, therefore, recover, unless he has lost his right by his negligence in bringing suit. We are of opinion that the statute of limitations does not constitute a bar, although there were more than five years between the times the appellant expended his money, and the lime he instituted this suit. The statute does not, in terms, apply to a case like the present. The appellant has no remedy at law. We perceive no principle upon which to apply the statute as a bar. If it be the case of a trust, express adjudications show that the statute has no application to shield the trustee, were the claim against him. See 3 Litt. 181. If the trustee is not protected, we perceive no forcible reason why his claims should he barred. The case of Costar vs. Murray and Murray, 5 Johnson’s Chan. Repts. 522, also establishes the principle that the statute of limitations does not apply to a direct trust, as between trustee and cestui que trust. In this case there can be nb doubt of the existence of *371 a trust interest, held by the appellant and his co-obligees. The bond on the Bate’s clearly shows it, and if there was any ambiguity, the parol evidence' strates it, without being inconsistent with the writings. This is admissible. See Steere vs. Steere, 5 Johnson’s Chan. Repts. 1. Moreover, here is a joint, equitable interest, held by the appellant and his co-obligees. It does not appear- that this interest has ever been divested, although it would seem that the appellant is no longer regarded as a trustee by the members of the church. This interest has been vested in the appellant by the title bond, and cannot be divested, unless he assigns it voluntarily, or is compelled to surrender it by judicial sentence. Neither has yet been done. Only part of the defendants rely on the statute of limitations . While others, so far from relying on that bar, expressly recognize the justice of the claim. An acknowledgement by one administrator, of a debt or account, will bind his co-administrator and take the case out of the operation of the statute of limitation. Hord’s administrators vs. Lee, &c. 4 Monroe, 36. They are but trustees appointed by the law, to manage the goods and chattels, rights and credits of their intestate, and there is strong ground in this case,.for contending by analogy, that the acknowledgement of the appellant’s claims by part of the defendants, acting in the character of joint trustees, should bind the others. But of this we will give no decisive opinion. It is enough that we have.reached the conclusion that the statute, as relied on in this case, constitutes no bar.
The demurrer should have been overruled. The legal title yet abiding in the Bate’s, they were proper parties, and in case of a sale of the lot to raise the money, the court should direct a conveyance from them to the purchaser.
This opinion may, probably, have a bearing on many cases similarly situated, and while we shall cautiously avoid running into the doctrines, and assuming the powers exercised by the English chancery, in regard to charitable uses, under their statute of 43 Elizabeth, we shall, nevertheless feel ourselves bound, when cases are properly brought before us, to see that associations of Christians are protected in their congregational *372 rights, under the act of 1814, and that trustees of pros perty, set apart for religious uses, shall likewise be secured in their legal expenditures, for the improvement and preservation of the property. And although vre have already said, that the condition of trustees under this act, is not strictly analogous to the present case,yet in principle, there is but little difference, and if any, it is. in favor of the appellant’s claim to relief. We have not thought it important to enter into a minute calculation of accounts. We will leave that to be done, by the circuit court, upon the principles of this opinion, when the canse shall be again opened before it.
Despee, and mandate.
Denny, for appellant.
The decree of the circuit court is reversed and set aside, and upon the return of the cause, that court must ascertain, by commissioners or otherwise, the amount expended by the appellant, in improvements-on the lot, out of his.individual funds, and in payments to others for work, labor and materials, in improving the lot, over and above the amount subscribed by him, as a donation or donations, and render a decree in favor of the complainant, for such excess, subjecting the lot to sale for its payment, if not paid by a day to be given for that purpose; and said court will make all such other orders and decrees as may be proper to carry into effect the principles settled in this opinion, so far as they relate to the present controversy, all which is ordered to be certified. The appellant must recover-, his costs.